IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DEBRA SCHWOEGLER,

                      Plaintiff,

    v.                                                         OPINION and ORDER

REVIVER FINANCIAL LLC and                                        18-cv-287-jdp
GURSTEL LAW FIRM P.C.,

                      Defendants.

---

Plaintiff Debra Schwoegler accepted a $2,000 offer of judgment, Dkt. 14, from defendants Reviver Financial LLC and Gurstel Law Firm P.C. on her claims under the Fair Debt Collection Practices Act (FDCPA) and the Wisconsin Consumer Act (WCA). Schwoegler now moves for an award of $19,326.25 in attorney fees and $1,730.64 in costs, Dkt. 17 and Dkt. 18, at 6, and for a supplemental award of $2,188.50 in fees incurred on her brief in reply to defendant's brief in opposition, Dkt. 24, at 4–5. The court is persuaded that Schwoegler is entitled to all of the costs and most of the fees she seeks. The fees that Schwoegler incurred after defendants moved to dismiss a related state-court debt collection lawsuit were unnecessary, and the court will disallow those.

ANALYSIS

Schwoegler moves for expenses under 15 U.S.C. § 1692k(a)(3), which provides for fee- and cost-shifting for a plaintiff who brings a successful action to enforce her FDCPA rights. The parties agree that Schwoegler is entitled to reasonable fees and costs and that the determination of a reasonable fee begins by calculating the lodestar, "the attorney's reasonable hourly rate multiplied by the number of hours reasonably expended," *Schlacher v. Law Offices of*

*Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 856 (7th Cir. 2009). Defendants challenge Schwoegler's request on three grounds, contending that (1) the hourly rate sought by Briane Pagel, one of Schwoegler's attorneys, is too high; (2) Schwoegler isn't entitled to fees she incurred pursuing her right-to-cure claim, which alleged that her creditor had failed to send her a statutorily required notice of her right to cure her default; and (3) Schwoegler isn't entitled to a witness fee for a deposition that didn't occur.

**A.  Briane Pagel's hourly rate**

Schwoegler seeks fees for the work of three attorneys and one paralegal at varying hourly rates, but the only rate that defendants challenge is Briane Pagel's $450 rate. Defendants argue that Pagel's hourly rate is inflated because FDCPA plaintiffs like Schwoegler are almost always represented under contingent fee agreements and would never pay an attorney $450 per hour over a relatively small debt like Schwoegler's. They say that their own counsels' hourly rates, which range between $150 and $375, are better evidence of what is reasonable. Dkt. 19, at 13.

In support of Pagel's rate, Schwoegler relies on the following:

- Pagel has more than 20 years of legal experience. Dkt. 18, ¶ 11.

- Approximately 75 to 90 percent of Pagel's practice focuses on consumer protection, an area in which he lectures and writes extensively. *Id.*, ¶¶ 16, 17.

- According to the U.S. Consumer Law Attorney Fee Survey Report, the median hourly rate in Wisconsin for a consumer lawyer with Pagel's experience is $475. *Id.*, ¶ 22.

- Schwoegler signed a hybrid contingent fee agreement agreeing to pay $450 per hour for Pagel's work in addition to 25% of any award beyond attorney fees. Dkt. 18-5.

- When Pagel's clients pay him on an hourly basis, he bills them at an hourly rate of $450, and they pay him at that rate. Dkt. 24, ¶ 9. Schwoegler supports this statement with a billing log from a family law client showing that Pagel billed his time at $450 per hour and that his client paid him at that rate. Dkt. 24-5.

2

- Pagel has been awarded an hourly rate of $450 in two recent state-court cases. Dkt. 18, ¶ 21.

Pagel has established a reasonable basis for his $450 hourly rate. As this court has explained, the most persuasive evidence that an hourly rate is reasonable is whether clients have actually paid it, either to the counsel seeking fees or to other comparable lawyers in counsel's market. *Broome v. Kohn Law Firm, S.C.*, No. 18-cv-860, 2019 WL 1595864, at *2 (W.D. Wis. Apr. 15, 2019). Schwoegler has submitted both types of evidence to support Pagel's rate, so his rate is presumptively reasonable. *See Boehm v. Martin*, No. 15-cv-379, 2017 WL 5186468, at *5 (W.D. Wis. Nov. 8, 2017) ("[A]ctual billing rates . . . are presumptively reasonable.") (citing *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011)). Alone, Schwoegler's fee agreement isn't convincing evidence that Pagel is really paid at an hourly rate of $450, as fee-shifting and contingency arrangements are the norm for plaintiffs' attorneys in FDCPA litigation. But Schwoegler has shown that Pagel's clients pay him $450 per hour for his work outside of the FDCPA. This is strong evidence that his fee is reasonable, as "[p]aying counsel in FDCPA cases at rates lower than they can obtain in the marketplace [for other types of cases] is inconsistent with the congressional desire to enforce the FDCPA through private actions." *Tolentino v. Friedman*, 46 F.3d 645, 653 (7th Cir. 1995). Schwoegler has also shown that Pagel's rate is slightly below the median rate in Wisconsin for consumer lawyers with comparable experience. And she has shown that Pagel has considerable experience and expertise in the field of consumer law.

Defendants' contention that a rate closer to their own would be more reasonable ignores the fact that plaintiffs' lawyers like Pagel often don't recover any fees at all when they lose. The risk of non-recovery is a key factor in determining whether a fee is reasonable. *McGuire v. Sullivan*, 873 F.2d 974, 980 (7th Cir. 1989). So it stands to reason that the hourly rates of

plaintiffs' attorneys would be higher than those of defense attorneys, who are typically paid whether they win or lose. Defendants' argument doesn't overcome the presumption of reasonableness to which Pagel's rate is entitled.

## B. Right-to-cure claim

Schwoegler seeks fees incurred pursuing two claims, both of which concern a loan she obtained from CashNetUSA, LLC. Reviver purchased Schwoegler's debt from CashNetUSA and sued Schwoegler in state court, alleging that she had defaulted on the loan. Reviver was represented by Gurstel in that lawsuit. For reasons the parties don't explain, Reviver dismissed its claims against Schwoegler with prejudice, after which Schwoegler brought this federal case against Reviver and Gurstel.

Schwoegler's first claim was a right-to-cure claim, in which she alleged that her creditor had accelerated her loan—that is, it had demanded payment of the full amount of the loan rather than payment in installments—without giving her a notice required by the WCA informing her of her right to cure her default. Schwoegler pursued this claim in both the state-court action, where she attempted to raise it as a counterclaim, and in this lawsuit, where she alleged it in her complaint. Through discovery in this court, Schwoegler attempted to learn whether her debt had been accelerated, and if so, when. Defendants didn't provide her with this information, but she ultimately learned from CashNetUSA that her loan hadn't been accelerated at all, after which she withdrew this claim.

Her second claim was a meaningful-involvement claim against Gurstel, alleging that Gurstel had violated the FDCPA by falsely representing that it had been meaningfully involved in Reviver's debt-collection process. *See Avila v. Rubin*, 84 F.3d 222, 228–29 (7th Cir. 1996) (attorney who communicated with debtor without reviewing debtor's file violated FDCPA

prohibitions against "[t]he false representation or implication that any . . . communication is from an attorney" and against any written communication that "creates a false impression as to its source, authorization, or approval") (quoting 15 U.S.C. § 1692e). She raised this claim only in this lawsuit, as Gurstel wasn't a party to Reviver's state-court suit against Schwoegler, merely Reviver's counsel. The parties settled this claim when Schwoegler accepted defendants' offer of judgment under Federal Rule of Civil Procedure 68.

Defendants challenge fees that Schwoegler incurred pursuing her right-to-cure claim on three grounds, contending that (1) the claim was unsuccessful; (2) she should have known the claim was meritless when she first raised it; and (3) work she performed on this claim in state court was unnecessary.

1. **Success of the claim**

Schwoegler's withdrawn right-to-cure claim was unsuccessful, which defendants say should prevent her from recovering her fees for that claim. In a fee-shifting case, a plaintiff can recover fees incurred in pursuit of an unsuccessful claim only if it's related to a successful claim.[1] *Jaffee v. Redmond*, 142 F.3d 409, 413 (7th Cir. 1998). The critical question is whether Schwoegler's attorneys' work on her right-to-cure claim was necessary for her successful meaningful-involvement claim. *Merriweather v. Family Dollar Stores of Ind., Inc.*, 103 F.3d 576, 583 (7th Cir. 1996). Schwoegler must show that she couldn't have effectively prosecuted her meaningful-involvement claim "without reviewing and analyzing the facts" of her right-to-cure

---

[1] Schwoegler raised her right-to-cure claim under the WCA, not the FDCPA, but both sides assume that the same fee-shifting analysis applies regardless of whether the fees were incurred in pursuit of an FDCPA claim or a state-law claim, so the court will make the same assumption. *See also Douyon v. NY Med. Health Care, P.C.*, 49 F. Supp. 3d 328, 338–39 (E.D.N.Y. 2014) (awarding fees incurred pursuing unsuccessful state-law claims that were related to successful FDCPA claims).

5

claim. *Id.* at 584. If Schwoegler shows that the claims were related in this way, the court must then determine whether her counsel's effort was reasonable in light of the success she achieved. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). Defendants' conduct in the litigation is a relevant factor in making this determination. *Anderson v. AB Painting and Sandblasting Inc.*, 578 F.3d 542, 546–47 (7th Cir. 2009).

Schwoegler's claims were related because the work her attorneys performed on her right-to-cure claim provided strong evidence supporting her meaningful-involvement claim against Gurstel. During discovery in this lawsuit, Schwoegler unsuccessfully tried to learn from defendants whether and when her original creditor, CashNetUSA, had accelerated her debt and whether it had sent any notices of default or right-to-cure notices to Schwoegler. Defendants didn't provide this information, so Schwoegler subpoenaed CashNetUSA and learned that it had never accelerated her debt, after which she withdrew her right-to-cure claim. Defendants' failure to provide this information strongly suggests that Gurstel lacked basic documentation regarding Schwoegler's debt, which supports her meaningful-involvement claim. *See Nielsen v. Dickerson*, 307 F.3d 623, 636 (7th Cir. 2002) (finding lack of meaningful involvement in part because creditor didn't provide its attorney with debtor's files). The time she spent on the right-to-cure claim directly contributed to her success on her meaningful-involvement claim, showing that these claims are related.

Next, the court must determine whether the effort of Schwoegler's counsel was reasonable considering her degree of success. *Hensley*, 461 U.S. at 436. Defendants argue that Schwoegler's fee award should be reduced because she received only $1,000 more than the maximum statutory damages allowed under the FDCPA, which they say doesn't support a fee award of more than ten times the settlement she received. But the court of appeals "has

claim. *Id.* at 584. If Schwoegler shows that the claims were related in this way, the court must then determine whether her counsel's effort was reasonable in light of the success she achieved. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). Defendants' conduct in the litigation is a relevant factor in making this determination. *Anderson v. AB Painting and Sandblasting Inc.*, 578 F.3d 542, 546–47 (7th Cir. 2009).

Schwoegler's claims were related because the work her attorneys performed on her right-to-cure claim provided strong evidence supporting her meaningful-involvement claim against Gurstel. During discovery in this lawsuit, Schwoegler unsuccessfully tried to learn from defendants whether and when her original creditor, CashNetUSA, had accelerated her debt and whether it had sent any notices of default or right-to-cure notices to Schwoegler. Defendants didn't provide this information, so Schwoegler subpoenaed CashNetUSA and learned that it had never accelerated her debt, after which she withdrew her right-to-cure claim. Defendants' failure to provide this information strongly suggests that Gurstel lacked basic documentation regarding Schwoegler's debt, which supports her meaningful-involvement claim. *See Nielsen v. Dickerson*, 307 F.3d 623, 636 (7th Cir. 2002) (finding lack of meaningful involvement in part because creditor didn't provide its attorney with debtor's files). The time she spent on the right-to-cure claim directly contributed to her success on her meaningful-involvement claim, showing that these claims are related.

Next, the court must determine whether the effort of Schwoegler's counsel was reasonable considering her degree of success. *Hensley*, 461 U.S. at 436. Defendants argue that Schwoegler's fee award should be reduced because she received only $1,000 more than the maximum statutory damages allowed under the FDCPA, which they say doesn't support a fee award of more than ten times the settlement she received. But the court of appeals "has

repeatedly rejected the notion that fees must be calculated proportionally to damages," which "applies equally to purported disproportionality between the relief requested and that received." *Estate of Enoch ex rel. Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009) (quoting *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1048 (7th Cir. 1999)). *See also Anderson*, 578 F.3d at 545 ("[M]easuring fees against damages will not explain whether the fees are reasonable in any particular case."). Schwoegler's award may have been relatively small, but $2,000 is a meaningful settlement, so an argument based solely on the ratio between her award and the fees she seeks cannot justify a reduction in her fees, *Estate of Enoch*, 570 F.3d at 823.

Defendants' conduct is evidence that Schwoegler's counsel expended their time reasonably. Defendants could have rid themselves of Schwoegler's right-to-cure claim at any time, including in state court, simply by providing her with documentation that her loan had never been accelerated. If they didn't possess this documentation, as seems to be the case, they could have obtained it from CashNetUSA themselves rather than forcing Schwoegler to subpoena CashNetUSA. Had they done so, Schwoegler's fees would have been considerably reduced, as would the ratio between her fees and her settlement. Schwoegler incurred much of her right-to-cure fees due to defendants' own conduct, which weighs against reducing her fee award. *See Anderson*, 578 F.3d at 546–47. The court isn't persuaded by defendants' arguments that her fee award should be reduced because her right-to-cure claim was unsuccessful.

### 2. Merits of the claim when raised

Defendants contend that Schwoegler isn't entitled to fees for her right-to-cure claim because she should have known that her claim was meritless under Wisconsin precedent at the time she raised it. Defendants rely on *Rosendale State Bank v. Schultz*, 365 N.W. 2d 911, 123 Wis. 2d 195 (Ct. App. 1985), in which the court held that the WCA doesn't require a creditor

to send a right-to-cure notice if it demands full payment only after the last loan installment was due. But at the time Schwoegler brought her right-to-cure claim, she didn't know whether her creditor had demanded full repayment before or after the last installment was due. If before, she may have been entitled to a right-to-cure notice under the WCA, but if after, *Rosendale* would have made the claim meritless. Schwoegler learned that her original creditor hadn't accelerated her loan only after discovery in this court, so Schwoegler did not have reason to know that her right-to-cure claim was meritless when she brought it.

### 3. Necessity of state-court work

Defendants contend that Schwoegler isn't entitled to the fees she incurred in state court after Reviver moved to dismiss its lawsuit against her with prejudice.[2] Specifically, defendants say that Schwoegler incurred unnecessary fees by filing an amended answer and opposing Reviver's motion to dismiss its case in order to press her right-to-cure counterclaim.

Schwoegler says this work was necessary because her right-to-cure claim might have been precluded in this lawsuit if she hadn't asserted it as a counterclaim in the state-court action. But under Wisconsin law, counterclaims are generally permissive, not compulsory. *A.B.C.G. Enters., Inc. v. First Bank Se., N.A.*, 515 N.W.2d 904, 908, 184 Wis. 2d 465 (1994). Schwoegler cites no authority under which defendants could have argued that her counterclaim had been compulsory in state court and thus precluded in subsequent litigation. So the court

---

[2] The parties assume that fees incurred in state court may be compensable in this court, so the court will make the same assumption. *See also Gunasekera v. Irwin*, 774 F. Supp. 2d 882, 888 (S.D. Ohio 2011) (awarding fees under 42 U.S.C. § 1988(b) for state-court work performed "in furtherance of federal litigation") (citing *N. Car. Dep't of Transp. v. Crest St. Cmty. Council, Inc.*, 479 U.S. 6, 15 (1986)).

8

is not persuaded that it was reasonable for Schwoegler to resist the dismissal of the state-court lawsuit.

The court will disallow the fees that Schwoegler seeks for this unnecessary work. Her fee petition includes 0.55 hours expended by paralegal Taylor Chantes in responding to Reviver's notice of dismissal at an hourly rate of $150 for a total of $82.50. Dkt. 18-6, at 1. Her petition also includes a block of 2.8 hours expended by Pagel at an hourly rate of $450 for a total of $1,260. *Id.* This block includes time spent drafting an objection to Reviver's notice of dismissal, an amended answer, and Schwoegler's complaint in this action. *Id.* Only the third task is compensable, but because Pagel engaged in block billing, the court cannot determine how much of this block was spent on the compensable task. But "[t]he essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection," *Fox v. Vice*, 563 U.S. 826, 838 (2011), so the court will assume that the time was evenly divided among the three activities and reduce Schwoegler's award by two-thirds of that amount, or $840.

**C. Witness fee**

The only cost that defendants challenge is a witness fee Schwoegler incurred in attempting to depose a representative of CashNetUSA regarding her right-to-cure claim. The representative failed to appear, and defendants argue that because the deposition didn't occur, Schwoegler isn't entitled to reimbursement for the witness fee. But defendants don't deny that Schwoegler paid the witness fee, they don't say that Schwoegler knew the deposition wouldn't happen when she paid the fee, and they cite no authority to support their position that the fee shouldn't be reimbursed, so this argument doesn't justify a reduction of Schwoegler's costs.

### D. Reply brief

In addition to the fees requested in her initial motion, Schwoegler asks for fees for time spent on her reply brief: 4.53 hours of Pagel's time at $450 per hour ($2,038.50) and one hour of Chantes's time at $150 per hour ($150), totaling $2,188.50. Dkt. 24, at 4–5. Considering the number of issues raised by defendants in their response brief, the requested time is reasonable, and the court will include it in Schwoegler's fee award.

### ORDER

IT IS ORDERED that plaintiff Debra Schwoegler's motion for attorney fees and costs, Dkt. 17, is GRANTED in part. Counsel for Schwoegler is AWARDED $20,592.25 in attorney fees and $1,730.64 in costs.

Entered December 13, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge